IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DEBORAH S. HICKS, | |
| Plaintiff, | |
| v. | Civil Action No. 24-1120-CFC |
| CEC ENTERTAINMENT HOLDINGS I, INC., | |
| Defendant. | |

## MEMORANDUM ORDER

Deborah Hicks worked at the "Chuck E. Cheese" location in Dover, Delaware from March 2020, until she was fired in September 2023. D.I. 1 ¶ 12. On October 9, 2024, Ms. Hicks sued her former employer, CEC Entertainment Holdings I, Inc. (CEC). *See* D.I. 1. Ms. Hicks alleges in the Complaint that, beginning in 2021, she repeatedly complained to company management about wrongful activities by her immediate supervisor, including sexual harassment of female employees. D.I. 1 ¶ 15. Ms. Hicks also alleges that CEC ignored her complaints and never acted on them until her supervisor later impregnated a fellow employee, a minor. D.I. 1 ¶ 15. This incident, according to Ms. Hicks, triggered a company investigation. *See* D.I. 1 ¶¶ 15, 18. Ms. Hicks alleges that after she told the investigators that she had previously complained to company management

about her supervisor's wrongful conduct and was ignored, she was fired. D.I. 1 ¶¶ 18–19. Ms. Hicks alleges that CEC discriminated against her on the basis of her race and sex in violation of state and federal law by ignoring her complaints and ultimately terminating her employment (Counts I through III) and that her termination constituted wrongful retaliation under state and federal law for protected "whistleblowing" (Counts IV and V). D.I. 1 at 7–13.

CEC has moved to dismiss the Complaint. D.I. 6. CEC argues that Ms. Hicks entered into a Mutual Agreement to Arbitrate Claims in which she promised to arbitrate all claims in any way related to her employment, including the claims asserted in her Complaint. D.I. 7 at 6–8. *See also* D.I. 7-1 (Mutual Agreement to Arbitrate Claims).

In response, Ms. Hicks concedes she entered into the arbitration agreement, and does not contend that her claims are outside its scope; but she argues that federal law prohibits the enforcement of that arbitration agreement against her in this case. D.I. 11 at 4–6. Specifically, Ms. Hicks argues that she has alleged conduct constituting a "sexual harassment dispute," and that the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021 (or EFAA)—codified at 9 U.S.C. §§ 401–402—prohibits enforcement of arbitration agreements against a person who has filed a case related to such a dispute. D.I. 11 at 5–11.

In reply, CEC argues that the EFAA applies only to claims by alleged victims of sexual abuse or sexual harassment, and, as CEC sees it, Ms. Hicks has alleged only that she was wrongfully fired after having reported sexual harassment suffered by others. D.I. 12 at 2–4.

The EFAA provides that, "at the election of the person alleging conduct constituting a sexual harassment dispute or sexual assault dispute, . . . no predispute arbitration agreement . . . shall be valid or enforceable with respect to a case which is filed under Federal, Tribal, or State law and relates to the sexual assault dispute or the sexual harassment dispute." 9 U.S.C. § 402(a). The EFAA defines a "sexual harassment dispute" as "a dispute relating to conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal, or State law." 9 U.S.C. § 401(4). Substituting this definition in the place of the defined term, the questions for the Court, therefore, are (1) whether Ms. Hicks has alleged "conduct constituting" "a dispute"; (2) whether that dispute "relat[es] to conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal, or State law"; and, if so, (3) whether her "case . . . relates to" that dispute. I conclude that the answer to each question is 'yes.'

The EFAA does not define "dispute," and the word therefore has its ordinary meaning. *Cornelius v. CVS Pharmacy, Inc.*, 133 F.4th 240, 246 (3d Cir. 2025). That ordinary meaning requires something more than merely an

3

injury but does not require the commencement of a lawsuit. In *Cornelius*, the Third Circuit held that, for purposes of the EFAA, "a 'dispute . . . arises' when an employee registers disagreement—through either an internal complaint, external complaint, or otherwise—with his or her employer, and the employer expressly or constructively opposes that position." 133 F.4th at 247. The court explained that the ordinary meaning of the word "dispute" "requires some aspect of opposition or disagreement," *id.* at 246, but does not require "an external complaint alleging employer liability," *id.* at 247.

Here, Ms. Hicks alleges that "in 2021[–]2022[] and February 2023, [she] made numerous complaints to her superiors concerning wrongful activities including sexual harassment and discriminatory conduct occurring at [CEC's] Dover, Delaware location" by her immediate supervisor. D.I. 1 ¶ 15. "These complaints included reports of sexual harassment of female crew members, solicitation of female minors for underage sex during work hours at [CEC's] business location, drug dealings and other wrongful conduct at said premises of CEC." D.I. 1 ¶ 15. Ms. Hicks further alleges that her complaints "were ignored and never acted upon by [CEC's] agents until a minor, employed by CEC, became pregnant by" the supervisor. D.I. 1 ¶ 15. Under *Cornelius*, these allegations are sufficient to allege conduct constituting a "dispute." CEC does not argue otherwise.

The next question is whether that dispute "relat[es] to conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal, or State law." § 401(4). Ms. Hicks alleges that the conduct she complains of included sexual harassment that was wrongful and illegal. *See* D.I. 1 ¶ 6 (alleging "ongoing wrongful conduct," including "sex with minors"); ¶ 15 (describing her complaints with respect to "wrongful activities including sexual harassment"); ¶ 35 (describing how she provided information about "sexual harassment . . . and other illegal activities"). Courts in other districts have disagreed about whether this portion of the EFAA means that a plaintiff must make allegations of sexual harassment that are sufficient to meet the plausible claim standard under Rule 12(b)(6), or merely a "nonfrivolous" claim. *Compare Diaz-Roa v. Hermes L., P.C.*, 757 F. Supp. 3d 498, 534 (S.D.N.Y. 2024) ("From a textual perspective, the statutory language does not require the person seeking to avoid the effect of an otherwise applicable arbitration clause to plead a claim for sexual assault or sexual harassment much less require the courts to determine that such person pleaded a claim upon which relief can be granted. Congress knows how to use such language when it so chooses."), *with Yost v. Everyrealm, Inc.*, 657 F. Supp. 3d 563, 585 (S.D.N.Y. 2023) (holding that "the term 'alleged' as used in § 401(4) is best read to implicitly incorporate the plausibility standard"). Here, however, CEC does not argue that Ms. Hicks failed to allege conduct constituting illegal sexual

5

harassment. *See generally* D.I. 12. Indeed, it concedes that Ms. Hicks alleges "heinous" conduct by her supervisor. D.I. 12 at 6. Rather, CEC argues only that the EFAA does not apply because Ms. Hicks does not allege that she herself was the victim of the illegal sexual harassment. D.I. 12 at 4–6. This narrow reading of the EFAA is not supported by its language. Congress used the word "victim" elsewhere in the EFAA. 9 U.S.C. § 401(3). Congress therefore could have limited the definition of "sexual harassment dispute" to sexual harassment of which the complainant claims to be the victim, if it had intended the result that CEC advocates.

The final question is whether Ms. Hicks's case "relates" to the "sexual harassment dispute" that she alleged. § 402(a). It does. In *Olivieri v. Stifel, Nicolaus & Co.*, 112 F.4th 74 (2d Cir. 2024), the Second Circuit held that the EFAA applied to a claim of wrongful retaliation for having reported sexual harassment. 112 F.4th at 77–78. The court noted that the EFAA defines a "sexual harassment dispute" as "a dispute *relating* to conduct that is alleged to constitute sexual harassment," *id.* at 92 (emphasis in original) (quoting 9 U.S.C. § 401(4)), and held that "retaliation resulting from a report of sexual harassment is 'relat[ed] to conduct that is alleged to constitute sexual harassment,'" *id.* (alteration in original) (quoting 9 U.S.C. § 401(4)). In *Olivieri*, the plaintiff who reported the sexual harassment was also the alleged victim of the harassment, but nothing in the

6

court's opinion (or the EFAA) suggests that the result should be different when the victim of retaliation is not the same person as the victim of sexual harassment. It would have been easy for Congress to draft the EFAA to accomplish that narrower result if it had wanted to do so. It did not, but instead chose more expansive words and phrases such as "dispute," "the person alleging conduct constituting a sexual harassment dispute," and "relat[ing] to the . . . sexual harassment dispute."

In this case, a sexual harassment dispute is at the core of the Complaint and repeated in each of the Complaint's claims. In particular, Ms. Hicks's wrongful retaliation claims (Counts IV and V) are directly premised on the allegation that she was fired because of the sexual harassment dispute. *See* D.I. 1 at 11–13.

In sum, CEC argues that Congress intended the EFAA only to protect alleged victims of sexual harassment or sexual abuse, relying on a statement by one Senator. D.I. 12 at 2–4. But my job is to attempt to apply the text of the statute. The text of the EFAA does not limit its reach to "victims," but instead gives rights to "person[s] alleging conduct constituting" "a dispute relating to conduct that is alleged to constitute sexual harassment." §§ 401(4), 402(a). Ms. Hicks is such a person.

NOW THEREFORE, at Wilmington on this Twenty-sixth day of June in

7

2025, it is HEREBY ORDERED that CEC's Motion to Dismiss (D.I. 6) is

**DENIED.**

                                                                                                  CHIEF JUDGE